IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| HENRY SEELIGSON, JOHN M. SEELIGSON, SUZANNE SEELIGSON NASH, and SHERRI PILCHER, individually and on behalf of all others similarly situated, § § § § § § Plaintiffs, § § v. § DEVON ENERGY PRODUCTION COMPANY, L.P., § § § § Defendant. § | Case No. 2:14-cv-996-JRG-RSP |

## <u>MEMORANDUM ORDER</u>

Before the Court is Defendant Devon Energy Production Company, L.P.'s ("DEPCO") Motion to Transfer Venue (Dkt. No. 13). DEPCO argues that this case should be transferred to the Sherman Division of this Court. Plaintiffs Henry Seeligson, John M. Seeligson, Suzanne Seeligson Nash, and Sherri Pilcher ("the Seeligsons") oppose transfer. Court finds that transfer is not warranted in this case.

## BACKGROUND

This motion to transfer venue arises from a contract dispute. The Seeligsons and DEPCO are parties to a Gas Purchasing and Processing Agreement ("the GPPA") which requires DEPCO to pay royalties for gas produced from the Seeligsons' wells in Denton County, Texas and elsewhere that is processed through the Bridgeport Gas Processing Plant in Wise County, Texas. (Dkt. No. 14 ¶¶ 22, 25, 49.) The Seeligsons live in Dallas, Texas and DEPCO is based in Oklahoma City, Oklahoma. (Dkt. No. 1 ¶¶ 7-10; Dkt. No. 13 at 2.) The Seeligsons seek to

represent a class of individuals, wherever they may be located, who own similar interests in gas produced from wells that is processed through the Bridgeport Gas Processing Plant.

The Seeligsons claim that DEPCO breached the GPPA when it "calculate[ed] the royalties it pays to Plaintiffs and Class members based on the artificial 'price' it manufactures as part of [a] sham transaction" with Devon Gas Services, L.P. ("DGS"). (Dkt. No. 1 ¶ 34.) The Seeligsons claim that DEPCO "manufactured" this price by "improperly deducting artificial, inflated and unreasonable fees" from the royalties paid to the Seeligsons. (Dkt. No. 1 ¶ 50.)

DEPCO hotly contests the Seeligsons' claims. DEPCO states that regardless of whether the fees charged by DGS are "artificial, inflated, or unreasonable," they "do not affect DEPCO's obligation [under the GPPA] to pay royalties based upon market value, or [on] prices reasonably obtainable, at the well," (Dkt. No. 14 at 9, ¶ 1.) *See also* (Dkt. No. 14 ¶ 27 (denying the Seelingsons' description of how DEPCO calculates the royalty).)

## APPLICABLE LAW

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2006). The first inquiry when analyzing a case's eligibility for § 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*In re Volkswagen I*").

Once that threshold is met, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963). The private factors are: 1) the relative ease of access to sources of proof; 2) the availability of compulsory process to secure the attendance of witnesses; 3) the cost of attendance for willing

witnesses; and 4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen I*, 371 F.3d at 203. The public factors are: 1) the administrative difficulties flowing from court congestion; 2) the local interest in having localized interests decided at home; 3) the familiarity of the forum with the law that will govern the case; and 4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id.* "The § 1404(a) factors apply as much to transfers between divisions of the same district as to transfers from one district to another." *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013).

The plaintiff's choice of venue is not a factor in transfer analysis. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314-15 (5th Cir. 2008) ("*In re Volkswagen II*"). Rather, the plaintiff's choice of venue contributes to the defendant's burden of proving that the transferee venue is "clearly more convenient" than the transferor venue. *Id.* at 315; *see also Radmax*, 720 F.3d at 288. Furthermore, though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen II*, 545 F.3d at 314-15

## DISCUSSION

**A.     Proper Venue for the Case**

Neither party disputes venue is proper in the Eastern District of Texas.

**B.     Private Interest Factors**

   **1.     Relative Ease of Access to Sources of Proof**

DEPCO claims that its sources of proof are more accessible from Sherman because the electronic and hard-copy "documents relating to DEPCO's business operations and the calculation of Plaintiffs' royalties under the Leases. . . are maintained in Oklahoma City." (Dkt. No. 13 at 5.)  DEPCO claims that "[DGS], which is the subject of numerous allegations in

Plaintiffs' Complaint. . . . [also] maintains its operational business records in Oklahoma City." (Dkt. No. 13 at 5) (citations omitted).

The Seeligsons claim that their sources of proof are more accessible from Marshall "because of the relative inconvenience of Sherman as compared to Marshall for third parties who possess relevant documents." (Dkt. No. 23 at 7.) The Seeligsons claim that Susan Rogers Eveland possesses a "substantial number of documents" relevant to this case "at [her] home in Tyler, Texas." (Dkt. No. 23-4 ¶ 9.) Those documents include "documents from [a prior DEPCO] litigation, royalty statements from before and after the settlement, the Settlement Agreement, and Lease Amendments." (Dkt. No. 23-4 ¶ 9.)

The Court finds that this factor is neutral as to transfer. DEPCO cannot dispute that Ms. Eveland's documents are more accessible from Marshall: Tyler is 61 miles from Marshall and 130 miles from Sherman. (Dkt. No. 23-6 at 21-22.) The Seeligsons cannot dispute that DEPCO's documents are more accessible from Sherman because Sherman is 160 miles closer to Oklahoma City than it is to Marshall.

DEPCO, however, argues that Ms. Eveland's documents do not factor into this analysis because they are not admissible evidence for trial. First, DEPCO claims that Ms. Eveland's documents are not relevant because they are "different from the royalty payment obligations in Plaintiffs' leases." (Dkt. No. 25 at 5.) Second, DEPCO claims the settlement agreement from the prior litigation is not admissible because "the settlement agreement itself—[] contains a confidentiality clause—and Fed. R. Evid. 408(a) prohibits testimony about the [] settlement's terms." (Dkt. No. 25 at 5.)

The Court finds no persuasive evidence that the payment obligations from the prior litigation are irrelevant. Both cases involve DEPCO, both cases involve a "Gas Purchasing and

Price Agreement," and both cases involve oil and gas interests in Denton and Wise Counties. (*See* Dkt. No. 23-4 at 19-24, 40-65; *see also* Dkt. No. 23-3 ¶ 7 (comparing royalty payments received from Well 4557-01).)

The Court also finds no persuasive evidence that the prior litigation settlement agreement is inadmissible. DEPCO has not provided the terms of the confidentiality agreement, and neither DEPCO nor the Seeligsons have applied Federal Rule of Evidence 408 correctly.[1]

Federal Rule of Evidence 408 states that a compromise offer is not admissible "either to prove or disprove the validity or amount of a disputed claim." Fed. R. Evid. 408(a). The Rule does not prohibit the many other uses of a settlement agreement.

### 2. Cost of Attendance for Willing Witnesses

DEPCO claims that attending trial in Sherman is convenient for DEPCO and DGS's witnesses. DEPCO's list of witnesses includes seven employees from its accounting, marketing, and corporate departments. (Dkt. No. 13 at 6 (naming Greg Dodd, Debbie Kelly, David Syring, James McPhee, Patty Cutbirth, and Scott Quillin).) All of those witnesses, according to DEPCO, are in Oklahoma City: 320 miles from Marshall and 168 miles from Sherman. (Dkt. No. 13 at 7-8.)

DEPCO also asserts that the Seeligsons "complain of gas production" that was "moved, gathered, transported, and/or processed through the Bridgeport Plant." (Dkt. No. 13 at 2.) DEPCO asserts that any "DEPCO or DGS employees with relevant knowledge of the operations at the Bridgeport Plant will likely reside in or near Bridgeport, Texas. . .or in or near Oklahoma City, Oklahoma, the location of the corporate offices for DEPCO and DGS." (Dkt. No. 13 at 6.)

---

[1] The Seeligsons have argued that this settlement agreement falls under the "exception" in Federal Rule of Evidence 408(b). DEPCO has argued that Federal Rule of Evidence 408 prevents a settlement in a prior dispute from being evidence in a later dispute.

The Bridgeport Plant is 224 miles from Marshall and 84 miles from Sherman. (Dkt. No. 13 at 8.) DEPCO finally notes that the Seeligsons live in Dallas which is 148 miles from Marshall and 64 miles from Sherman. (Dkt. No. 13 at 7-8.)

The Seeligsons claim that DEPCO employees will not find attending trial in Marshall more inconvenient than Sherman. (*See* Dkt. No. 23 at 8-9.) The Seeligsons also claim that their third-party witnesses would find attending trial in Marshall more convenient than Sherman.

The Seeligsons have identified Nancy Shoop Jeffery in Little Rock, Arkansas, as a third-party witness who will testify "regarding the lack of justification for certain deductions to royalty payments *and* allegations of Defendant's sham transactions." (Dkt. No. 23 at 10.) Ms. Jeffery lives in Little Rock which is 217 miles from Marshall and 299 miles from Sherman. (Dkt. No. 23-5 ¶¶ 5-6.)

The Seeligsons have also identified Ms. Eveland in Tyler, Texas, as a witness who will "testify about the terms of the settlement of [a prior] litigation [with DEPCO], amendments made to her lease in connection with the settlement, and the impact (if any) of the settlement and lease amendments on the calculation of royalty payments and gas processing charges for the [prior litigation's] plaintiffs." (Dkt. No. 23 at 11.) Ms. Eveland lives in Tyler which is 61 miles from Marshall and 130 miles from Sherman.

In *In re Volkwagen I* the Fifth Circuit held that "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be travelled." *In re Volkswagen I*, 371 F.3d at 204-05. The Fifth Circuit stated that "[a]dditional distance means additional travel time. . . and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment." *Id.* at 205.

This problem becomes especially acute "when the travel time from [a witnesses'] home or work site to the court facility is five or six hours one-way as opposed 30 minutes or an hour." *Id.* at 205.

The Court finds this factor is neutral as to transfer. The Court agrees with DEPCO that DEPCO and DGS's witnesses would find a trial in Sherman more convenient. But the Court also agrees with the Seeligsons that Ms. Jeffery and Ms. Eveland would find a trial in Marshall more convenient.

As to the alleged DEPCO or DGS witnesses in Bridgeport, the Court assigns little weight to their convenience. DEPCO has identified no witnesses in Bridgeport, and Mr. McPhee a witness with knowledge about the Bridgeport Plant lives in Oklahoma City. (Dkt. No. 13 at 6 (stating that all of the witnesses listed live in or near Oklahoma City).)[2] Indeed, DGS has not owned the Bridgeport Plant since before this case was filed. (Dkt. No. 13-2 ¶ 6.)

### 3. Availability of Compulsory Process to Secure the Attendance of Witnesses

DEPCO states that only the Sherman Division can compel a DEPCO employee or third party witness to attend a hearing. (Dkt. No. 13 at 9.) DEPCO claims that "non-party employees of DEPCO, and any DGS, EnLink Midstream, or other third-party officers or employees who work or reside at or near the Bridgeport Plant or in or near Dallas, Texas clearly could be compelled to attend trial in the Sherman Division because they work or reside within 100 miles

---

[2] The Court rejects any suggestion that EnLink Midstream, the current owner of the Bridgeport Plant, has relevant evidence. (Dkt. No. 13 at 6-7). "In royalty underpayment cases such as this one, the key witnesses will address the lease language, accounting practices, and marketing practices which are at issue pursuant to the [breach of contract claims]." (Dkt. No. 13 at 5.) Mr. McPhee, for example, would have testified in the prior litigation on operations, transactions and economics, and financial records. (Dkt. No. 13-3 at 10.) The Court finds it extremely unlikely that EnLink Midstream will have witnesses that can testify as to DEPCO or DGS's accounts and financial records. (*See also* 13-3 at 4-45 (listing no witnesses from Bridgeport).)

of Sherman, while they potentially could not be compelled to attend trial in the Marshall Division. . . ." (Dkt. No. 13 at 9-10.)

The Seeligsons claim that they "have supplied declarations of two, non-party witnesses whom [the Seeligsons] intend to call at trial. Both of [the Seeligsons'] witnesses have stated that the Marshall Division is more convenient." (Dkt. No. 23 at 7.) The Seeligsons also claim that "one of these witnesses, Ms. Eveland, lives within 100 miles of the Marshall Courthouse but more than 100 miles from the Sherman Courthouse. Accordingly, she can be compelled to testify in Marshall but *not* necessarily in Sherman." (Dkt. No. 23 at 7-8 (citations omitted).)

Federal Rule of Civil Procedure 45 provides that the Court may command a person who "resides, is employed, or regularly transacts business in person" in Texas to attend trial in Marshall if that person "would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(B). Party witnesses generally do not require compulsory process, so the Court's analysis focuses on third-party witnesses for whom compulsory process to attend trial may be necessary.

The Court finds this factor is neutral as to transfer because the Marshall and Sherman Divisions have compulsory process over the same witnesses for trial. DEPCO has provided no evidence that a witness in Dallas would incur "substantial expense" if required to appear in Marshall for trial. The Seeligsons have provided no evidence that Ms. Eveland would incur "substantial expense" if required to appear in Sherman for trial. (*See, e.g.*, Dkt. No. 23-4 ¶ 8 (stating only that Sherman is "inconvenient").)

The Court, however, rejects the Seeligsons' argument that the "convenience" of the witnesses applies to this factor. The Court also finds that neither the Marshall nor Sherman Division has compulsory process over Ms. Jeffery in Little Rock or any potential third-party witness in Oklahoma City.

### 4. All Other Practical Problems that Make Trial of a Case Easy, Expeditious, and Inexpensive

The parties agree this factor is neutral. (Dkt. No. 13 at 10-11; Dkt. No. 23 11-12.)

## C. Public Interest Factors

### 1. Local Interest in Having Localized Interests Decided at Home

The parties' dispute arises from a contract that covers wells in Denton County, Texas. The Court agrees with DEPCO that for this reason, Sherman Division residents have an interest in this case.

The Court, however, notes that the residents of Oklahoma City or Dallas have the most interest in this case. DEPCO is based in Oklahoma City and the named plaintiffs live in Dallas. Furthermore, the class members will likely come from a broad area. For example, in the prior DEPCO litigation, the plaintiffs were in Dallas County, Texas, Los Angeles County, California (Dkt. No. 23-4 at 12), Charlotte County, Florida (Dkt. No. 23-4 at 16), San Francisco County, California (Dkt. No. 23-4 at 16), and Pulaski County, Arkansas (Dkt. No. 23-4 at 32).[3]

None of the parties or likely witnesses are located in the Sherman Division. The fact that the gas comes out of the ground there is of little relevance to what is a contractual dispute between the parties. While this factor weighs in favor of transfer, it does so only slightly.

---

[3] Although this does not factor into the transfer analysis, the Court notes that DEPCO has taken a narrow view on relevance. DEPCO claims that gas produced from wells in the Marshall Division is not relevant because "no gas produced from any DEPCO lease within the Marshall Division [was] transported to the Bridgeport Plant." (Dkt. No. 13 at 2.) However, the Seeligsons' Complaint alleges that DEPCO "committed such breaches [of contract] knowingly and intentionally through purported sales to one or more of its affiliates (including DGS)." (Dkt. No. 1 ¶ 50 (emphasis added).) DEPCO's practices and records regarding its wells within the Marshall Division may be relevant to the claims.

2. **Administrative Difficulties Flowing From Court Congestion; Familiarity of the Forum With the Law that Will Govern the Case; and Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law**

The parties agree these three factors are neutral. (Dkt. No. 13 at 12; Dkt. No. 23 at 14.)

## CONCLUSION

The factors, on a whole, do not show that Sherman is "clearly more convenient" than Marshall. Seven of the factors are neutral and the local interest weighs only slightly in favor of transfer. The Court is unwilling to transfer the case based solely on the local interest factor because, at bottom, this is not a Sherman Division dispute. Rather, it is an accounting dispute between residents of Dallas and an Oklahoma company, over royalties paid to members of a widespread class. The Court has found that transfer creates no significant gain in convenience to either party, and when the dispute is foreign to both Divisions the Court should not simply shift the burden of travel from DEPCO onto the non-party witnesses identified by Plaintiffs. DEPCO's Motion to Transfer Venue (Dkt. No. 13) is **DENIED**.

**SIGNED this 19th day of August, 2015.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE